STATE v. FREDERICK W. AMES.[1]

July 9, 1903.

Nos. 13,480—(24).

**Challenge to Grand Jurors.**

Challenges to individual grand jurors, based upon the ground of prejudice or bias, can be interposed only before the jury is sworn.

**Same.**

Such challenges cannot be made at the time of arraignment, by way of a plea in abatement or motion to quash the indictment, under G. S. 1894, § 7189. That section provides only for challenges or objections going to the regularity of the proceedings in the selection and formation of the jury.

**Receiving Bribe.**

Defendant was indicted for having, while acting as superintendent of the police department of the city of Minneapolis, received a bribe from one Mills, under an agreement to protect her in an unlawful occupation in said city. The evidence showed that Mills paid the money to one Cohen, who, the state claimed, was acting for defendant in receiving the same. It is *held*, taking the evidence altogether, that it is sufficient to justify the jury in finding that Cohen was acting for and in behalf of defendant; that the payment to him was equivalent to a payment to defendant personally.

**Evidence of Other Crimes.**

Evidence of the commission of other crimes by defendant is competent if it tends corroboratively or directly to establish his guilt of the crime charged in the indictment on trial, or some essential ingredient thereof. Such evidence tends to establish guilt if it discloses a motive, a criminal intent, guilty knowledge, identifies defendant, or is part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to prove the other. Under this rule, it is *held* that evidence that other persons paid money to Cohen in consideration of official protection in an unlawful occupation, similar to that engaged in by witness Mills, was properly received. It tended (a) to connect Cohen and defendant as being jointly concerned in such unlawful transactions, and to show that defendant authorized Cohen to act for him in receiving the money; and (b) the evidence, taken as a whole, tended

[1] Reported in 96 N. W. 330.

to show that the payments by the different persons were all made as a part of a common scheme or plan instigated and carried on by defendant and Cohen to solicit and receive such bribes. State v. Fitchette, 88 Minn. 145, distinguished.

### Instructions to Jury.

The court charged the jury generally to consider all the evidence before them, and particularly that certain evidence offered by defendant, tending to show his previous good character, was competent, as tending to show that he would not be likely to commit the crime charged against him. *Held*, that it was not necessary, in addition to these specific directions, for the court to go further, and specially say to the jury that they must consider the evidence of good character.

### Same—Testimony of Defendant.

The court charged the jury that it was defendant's right and privilege to be sworn as a witness in his own behalf; that they "should consider his testimony, together with all the other testimony in the case, and give it such weight as in your judgment it should receive, bearing in mind, of course, the fact that he has a vital interest in the outcome of this case, and applying to his testimony the same rules of credibility that you apply to any other witness in the case." *Held* not error.

### Verdict Sustained by Evidence.

Other assignments of error examined, and *held* not well taken; and *held*, further, that the verdict is sustained by the evidence.

Appeal by defendant from an order of the district court for Hennepin county, Brooks, J., denying a motion for a new trial, after a trial and conviction of the crime of receiving a bribe. Affirmed.

*Welch, Hayne & Hubachek,* for appellant.

The right to challenge the jurors exists as well after, as before, the indictment is found. G. S. 1894, §§ 7188–7192, 7283; State v. Russell, 69 Minn. 502; State v. Osborne, 61 Iowa, 330.

In criminal cases the principal is not answerable for acts of his agent as in civil cases; each must answer for his own acts and stand or fall by his own behavior. To affect the superior by the act of the agent there must be the command of the superior. Rex v. Huggins, 2 Strange, 882; 2 Greenleaf, Ev., § 68; Reinhard, Ag., § 361; Morse v. State, 6 Conn. 9; Pearce v. Foote, 113 Ill. 228.

If it is competent in any case to establish the understanding or agreement which must be shown under the statute in order to consti-

tute the offense, by inference or anything short of an express agreement, certainly that inference must be drawn from the facts and circumstances shown and not from the opinion of any witness.   People v. McLaughlin, 150 N. Y. 365; State v. Garvey, 11 Minn. 95 (154); State v. Pierce, 85 Minn. 101.   .

It is improper on the trial of a defendant for a crime to prove that he has committed other crimes, having no connection with the one under investigation.   State v. Fitchette, 88 Minn. 145; State v. Gardner, 88 Minn. 130; Roscoe, Cr. Ev. (11th Ed.) 87; Wharton, Cr. Ev. (9th Ed.) § 29; Underhill, Cr. Ev., § 87; 3 Rice, Cr. Ev., § 153, et seq.; People v. Molyneux, 168 N. Y. 264.

The evidence in the case did not come within any of the exceptions to the rule excluding evidence of other offenses.   Wharton, Cr. Ev. (9th Ed.) § 48; Underhill, Cr. Ev. § 58; Abbott, Tr. Br. Cr. 410; 1 Bishop, New Cr. Proc. (4th Ed.) § 1120; People v. Sharp, 107 N. Y. 427; Gunning v. People, 86 Ill. App. 676; 1 Bishop, New Cr. Proc. (4th Ed.) § 523; McCutcheon v. People, 69 Ill. 601.

Evidence of the defendant's good character may generate and create a doubt as to his guilt and is to be considered with the other evidence in the case.   State v. Van Kuran, 25 Utah, 8; Williams v. State, 52 Ala. 411; People v. Bowman, 81 Cal. 566; State v. Howell, 100 Mo. 628; Remsen v. People, 43 N. Y. 6; U. S. v. Jones, 31 Fed. 718; Hanney v. Commonwealth, 116 Pa. St. 322; Heine v. Commonwealth, 91 Pa. St. 145; Commonwealth v. Cleary, 135 Pa. St., 64.

The court violated the rule which prohibits the trial court from charging the jury as to the credibility of particular witnesses.   Wood v. State, 48 Ga. 192; State v. Hoy, 83 Minn. 286; Harriott v. Holmes, 77 Minn. 245; State v. Nestaval, 72 Minn. 419; Goodhue F. W. Co. v. Davis, 81 Minn. 211.   See also People v. Lang, 104 Cal. 363; State v. Webb (Idaho) 55 Pac. 892.

*W. B. Douglas,* Attorney General, *F. H. Boardman,* County Attorney, *C. S. Jelley,* Assistant County Attorney, and *John W. Arctander,* Special Assistant to the Attorney General, for the State.

There was no error in receiving the evidence tending to show other offenses.   The test of the admissibility is whether the evidence "tends to prove the commission of the crime charged," or "is in some way

relevant to the issue." State v. Lawlor, 28 Minn. 216; State v. Barrett, 40 Minn. 65; State v. Madigan, 57 Minn. 425; State v. Hayward, 62 Minn. 474; State v. Wilson, 72 Minn. 522; State v. Durnam, 73 Minn. 150; State v. Southall, 77 Minn. 296; State v. Sodini, 84 Minn. 444; State v. Bourne, 86 Minn. 426.

Evidence should be excluded which tends to the proof of collateral facts only. It should be admitted, if it has a natural tendency to establish the fact in controversy. Commonwealth v. Merriam, 14 Pick. 518.

The evidence of other offenses in this case comes under at least three exceptions to the rule excluding evidence of a crime other than the one under investigation, viz.: It tended (1) to identify the witness as defendant's instrumentality and to confirm defendant's connection with the crime; (2) to show defendant's motive and intent; (3) to show parts of a common scheme, plan, system and transaction involving the offense for which appellant was on trial. Wallace v. State, 41 Fla. 547.

It is sometimes said that such evidence may be introduced where the several crimes form part of an entire transaction, but it is perhaps better to say, where they have some connection with each other, as a part of the same plan or induced by the same motive. Commonwealth v. Robinson, 146 Mass. 571; Kelley v. People, 55 N. Y. 565; People v. McKane, 143 N. Y. 455; People v. Van Tassel, 156 N. Y. 561; State v. Palmer, 79 Minn. 428; Wallace v. State, supra; State v. Gardner, 88 Minn. 130.

It is not proper to show defendant's general good character in any criminal prosecution. Such proof must be limited to the trait of character affected by the particular case. Peake v. Conlan, 43 Iowa, 297; People v. Fair, 43 Cal. 137, 148; State v. King, 78 Mo. 555; State v. Pearce, 15 Nev. 188; Walker v. State, 102 Ind. 502; State v. Bloom, 68 Ind. 54, 57; Johnson v. State, 94 Ala. 35; Pate v. State, 94 Ala. 14; Commonwealth v. Wilson, 152 Mass. 12; People v. Bowman, 81 Cal. 566.

BROWN, J.

Defendant was tried and convicted in the district court of Hennepin county of the crime of receiving a bribe while acting in the capacity

of superintendent of the police of the city of Minneapolis, and appealed from an order denying his motion for a new trial.

A large number of assignments of error are reduced by counsel to ten distinct propositions, and these will be taken up and disposed of in the order presented in appellant's brief. A statement of the facts will be made in connection with the appropriate question.

1. At the time defendant was arraigned and required to plead to the indictment, he interposed a motion to quash, annul, and set the same aside, and for leave to challenge and interpose objections to certain of the grand jurors, which motion was in all things denied, and of this ruling he complains. The motion presented questions relative to the qualification of individual members of the grand jury, and was based upon the claim (1) that every member of the grand jury was a prosecutor upon a charge against the defendant; (2) that a state of mind existed on the part of each juror with reference to the case and with reference to defendant which prevented him from acting impartially and without prejudice to the substantial rights of defendant. It was urged in support of the motion that the grand jury had, a short time prior to returning this particular indictment, found and returned into court another indictment charging defendant with having received a bribe, upon which indictment he was thereafter tried and duly acquitted. He also attempted to show in support of the motion that individual members of the grand jury had expended, of their personal and private funds, a large amount of money in the investigation of this and other charges of municipal corruption in the city of Minneapolis, and that one or more of the grand jurors personally expressed sentiments of hostility toward defendant. In support of these charges of prejudice and bias on the part of members of the grand jury, defendant asked leave of the court to interrogate said jurors in open court on the subject, but the request was denied.

We find no error in the ruling of the court in respect to this motion. The objections thereby made to the grand jury were, in effect, challenges to the individual jurors for prejudice and bias, which could be interposed only after they were sworn and before they retired. It is so provided by G. S. 1894, § 7188, and it is not important that defendant had not previously been bound over to await the action of the grand jury. It was held in State v. Davis, 22 Minn. 423, that the right to

challenge the panel of a grand jury, or any member thereof, is secured by statute only to persons held to await their action. And in Maher v. State, 3 Minn. 329 (444), the court held that the fact that defendant was confined in jail when the jury was sworn did not give him the right subsequently to challenge them.

Section 7189, under which counsel claimed the right to interpose the challenge in the case at bar, does not apply. That section refers exclusively to challenges to the array or panel, and not to individual jurors; and though a challenge to the array, in the form of a plea in abatement or motion to quash the indictment, may be interposed thereunder after the return of an indictment, within the decision in State v. Russell, 69 Minn. 502, 72 N. W. 832, only questions relative to the regularity of the proceedings in the selection and formation of the jury can be urged under it. This is the common-law rule, and there was no intention on the part of the legislature to change it. At common law, challenges going only to the prejudice or bias of individual jurors were required to be made before they were sworn. State v. Rickey, 10 N. J. L. 83; People v. Jewett, 3 Wend. 314; State v. Hamlin, 47 Conn. 95; 1 Bishop, Cr. Proc. 882, 883. And such has always been the practice in this state, so far as we are advised. State v. Russell, supra, though perhaps in conflict with State v. Davis, supra—the latter holding that both challenges to the array and to individual members must be made before the jury is sworn—does not sustain defendant to the extent claimed. The objections there entertained, after the jury had been sworn, involved the proceedings leading up to its formation, and not the qualifications, as to prejudice or bias, of the jurors. The decision in the case of State v. Osborne, 61 Iowa, 330, 16 N. W. 201, appears to have been based upon the provisions of the statutes of that state, and is not in point.

2. Defendant was superintendent of the police department of the city of Minneapolis, and the indictment charges him with having received a bribe from one Addie Mills on February 4, 1902, of the sum of $15, upon the understanding and agreement that he would, as such superintendent of police, protect said Mills from arrest or punishment for keeping a house of ill fame in said city, in which occupation she was then engaged; it being then and there the duty of defendant, as such official, to cause the arrest of said Mills, or any other person en-

gaged in such an unlawful occupation. To establish the truth of this charge, the state introduced evidence tending to show that witness Mills, the person named in the indictment, on February 5, 1902, paid to one Joseph Cohen the sum of $15, pursuant to an arrangement previously made with defendant, and for the purpose of securing protection in her occupation; that Cohen represented defendant, and was authorized by him to receive the money. Witness Mills testified to the payment to Cohen, and related certain conversations with him concerning it, and defendant complains of the ruling permitting her to do so. It is insisted on the part of defendant that no foundation was laid for the introduction of her testimony; that there was no sufficient showing of connection or confederacy between Cohen and defendant, or that defendant ever authorized Cohen, directly or indirectly, to collect or receive the money from her. This presents one of the principal features of the case, and it is necessary to its proper understanding to make a brief outline or statement of the facts relied upon by the state to establish the contention that Cohen was the representative of defendant, and authorized to receive for him the money from witness Mills.

As already stated, defendant was superintendent of the police department of the city of Minneapolis, charged with the powers and duties usually possessed by such an officer—to maintain the law, preserve order, and direct his subordinates in that behalf. In January, 1902, together with two police officers of the city (Brackett and Wirtensohn, members of his department and subject to his direction), defendant made a tour of the city for the purpose of locating houses of the character of that operated by witness Mills—ostensibly candy stores, but in fact conducted for immoral purposes in violation of the laws of the state; the business of candy vending being a mere cover to hide the real character of the place. To each one of the proprietors of such places defendant stated that he had been informed that they had been paying money to one Gardner, then a police officer, but not under the direction of defendant, for certain purposes; and he directed them to stop it, and make no further payments to any person until he should advise them. He directed them to call at his office in the course of a week or two, at which time he would be prepared to inform them what they would be expected to do in respect to future payments. This statement was made to witness Mills, and, pursuant to his

directions, she called at the office of defendant within a short time thereafter, when she was informed by him that he had not yet decided what to do, but that as soon as he came to a decision he would communicate the fact to her; and she testified at that time he agreed to "protect her all he could." He ordered all the women visited at the time stated to call at his office for directions in respect to future payments of money, with which order they complied, when they were told, as witness Mills was, that he had not yet determined what they should do, but would communicate with them later.

Testimony was then introduced tending to show that, soon after the women so called upon him, defendant ordered Officer Wirtensohn, one of the officers who had previously accompanied him, to go with said Cohen to the various houses so previously visited, which order Wirtensohn complied with. He called at each place with Cohen, and the latter, who had a list of the places, informed the women that he represented defendant, and that they would be required to make payments of money for protection to him at his jewelry store, and directed them how the payments were to be made—by inclosing the money in an envelope marked only with a number, which Cohen at the time gave each. The evidence shows that thereafter the women, including witness Mills, made monthly payments to Cohen of various amounts, under the arrangement made with defendant that they should be protected in their unlawful occupation.

There is no direct evidence connecting defendant with Cohen—no evidence that defendant ever had any conversation with him in reference to collecting money from these persons. That defendant authorized him to do so can be gathered only from the circumstances shown in evidence—the trip by defendant to the various places with Officers Wirtensohn and Brackett; the statement of defendant that he would in the near future inform the women what further orders he would expect them to comply with in respect to the payment of money; the fact that he soon thereafter directed Wirtensohn to accompany Cohen to the various places; that Cohen had a list of the places; and that he subsequently collected and received from them various sums of money. This evidence was sufficient to warrant the jury in finding that the officers named, including defendant and Cohen, conspired and confederated together to commit the unlawful acts complained of,

and that defendant authorized and directed Cohen to receive the money for him. It tended to show a conspiracy or confederacy, and the declarations and statements of each were competent evidence against defendant, whether made in his presence or not. Circumstantial evidence is as legal and competent in criminal as in civil actions, and the inferences to be drawn from the facts we have stated all point with unerring certainty to the conclusion that Cohen was the representative of defendant in the receipt of this money, and was a co-conspirator in the whole infamous transaction. There was therefore no error in the ruling of the court permitting the witness Mills to testify that she paid Cohen the sum of $15 at about the time charged in the indictment, nor any error in permitting testimony as to the declarations and statements made by him concerning the same, or when previously directing her when and where to make the payment. State v. Palmer, 79 Minn. 428, 82 N. W. 685; People v. McKane, 143 N. Y. 455, 38 N. E. 950; State v. Gardner, 88 Minn. 130, 92 N. W. 529; State v. Winner, 17 Kan. 298.

It is also contended, in connection with the testimony of witness Mills, that it was error to permit her to testify to the conclusion that the money was paid for protection. There was no error in the ruling of the court on this subject. It appeared from her testimony that defendant had agreed to protect her in consideration of such payment. It was also shown that she was not indebted to Cohen in any way, or to any person connected with the city administration. The objection to the question for what purpose she paid the money was properly overruled. Ganser v. Fireman's Fund Ins. Co., 38 Minn. 74, 35 N. W. 584. At any rate, it in no way prejudiced defendant. Her answer was not conclusive, and the question was submitted to the jury to determine from all the evidence before them.

3. The state was permitted to prove, over the objection and exception of defendant, payments of money to Cohen by the other women referred to, and to relate conversations had with him in reference thereto. It is claimed by defendant that this testimony tended solely to prove the commission of other separate, independent offenses, and was incompetent and inadmissible. The decision in State v. Fitchette, 88 Minn. 145, 92 N. W. 527, is relied upon as sustaining the position.

The question as to the admissibility of evidence of this character has

been before the courts often, and the rule permitting its introduction is variously stated by judges; but, reduced to its narrowest compass, the true rule is that evidence of the commission of other crimes is admissible when it tends corroboratively or directly to establish the defendant's guilt of the crime charged in the indictment on trial, or some essential ingredient of such offense. As stated by Chief Justice Parker in People v. Molineux, 168 N. Y. 264, 343, 61 N. E. 286: "Does the evidence of the other crime fairly aid in establishing the commission by defendant of the crime for which he is being tried? And that test, and none other, is fairly established by the authorities."

What was said in the general discussion of the subject in the Fitchette case was not with a view of laying down any hard and fast rule in such cases. As applied to the facts there before the court, the decision in that case is in accord with the authorities generally, and we adhere to it. It is in line with other cases in this court. In State v. Madigan, 57 Minn. 425, 59 N. W. 490, the court said: "If the evidence offered tends to prove the commission of the crime charged in the indictment, it is not incompetent because it also tends to prove the commission by the accused of another crime." See also State v. Hayward, 62 Minn. 474, 65 N. W. 63; State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Bourne, 86 Minn. 426, 90 N. W. 1108; State v. Gardner, 88 Minn. 130, 92 N. W. 529. The evidence of the commission of some other crime directly tends to show the guilt of defendant of the crime charged when it discloses a motive, a criminal intent, guilty knowledge, the absence of mistake, identifies the defendant, or is a part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other.

The Fitchette case is distinguishable in at least two respects: A. It was necessary for the state to establish a connection between Cohen and defendant in respect to payments of money by the women, and to show that Cohen was authorized by the latter to collect and receive the same for him. That it tends to show a confederacy between the officers and Cohen is clear, and, that fact being established, it was competent for the state to show the declarations, statements, and acts of any one of the conspirators. Defendant directed Officer Wirtensohn to accompany Cohen to the various houses in question, and Cohen, on meeting each woman, informed her that he had been sent by defendant, with di-

rections to notify them to make all further payments of protection money to him, instead of to Gardner, as they had theretofore been doing. The evidence tended to corroborate, confirm, and establish the contention of the state that Cohen represented defendant in the receipt of the money, and comes fairly within the general rule above stated. No such issue or question was presented in the Fitchette case. In that case the money was paid direct to Fitchette.

B. It is also distinguishable from the Fitchette case in that it tended to establish a scheme or system of crimes, intimately associated and connected, so that proof of the other payments was corroborative, and tended directly to the truth of the charge made in the indictment. The evidence leaves no room for reasonable doubt on this subject. It established beyond question a scheme concocted by defendant to put the abandoned women of Minneapolis under tribute to him in return for his official protection, and each and every payment was a part of the one scheme. It was practically one transaction—each act, each payment, an essential part of the whole plan of corruption—and the evidence was competent. Swan v. Com., 104 Pa. St. 218; Mason v. State, 42 Ala. 532; People v. Gray, 66 Cal. 271, 5 Pac. 240; People v. Cobler, 108 Cal. 538, 41 Pac. 401; Mayer v. People, 80 N. Y. 364; People v. Peckens, 153 N. Y. 576, 47 N. E. 883; State v. Eastwood, 73 Vt. 205, 50 Atl. 1077. There was no attempt to establish a scheme or plan in the Fitchette case.

4. It is contended that the court erred in refusing to give certain requests of defendant in respect to evidence relating to his good character. We have examined these requests, together with the general charge of the court on the subject, and conclude that their refusal was not error, for the subject was fully and sufficiently covered by the general charge. The court instructed the jury that evidence of defendant's reputation for honesty, integrity, and truthfulness was competent, as tending to show that he would not be likely to commit the crime charged against him, and that if the jury believed from the evidence that defendant had previously borne a good reputation for honesty, integrity, and truthfulness among his acquaintances and neighbors, that fact was proper to be considered by them, in connection with all the other evidence in the case, in determining the question of his guilt or innocence. It was not necessary for the court to go further, and say

to the jury that they must consider such evidence. The court had previously charged them that they were the exclusive judges of the facts and of the credibility of the several witnesses, and that it was their duty to consider all the evidence bearing upon the questions at issue.

It is well settled, both on principle and authority, that the court should not single out and give undue prominence to particular items of evidence, and instruct the jury that they might or might not create in their minds a reasonable doubt as to the guilt of defendant. Such instructions would be argumentative in character and improper. 11 Enc. Pl. & Pr. 185. Its full duty is performed when the general rules of law applicable to the issues are given to the jury, and they are charged to consider all evidence in the case.

5. Defendant was sworn as a witness in his own behalf, and gave testimony in support of his plea of not guilty. The court instructed the jury, in connection with the charge, that they should consider all the evidence; that they should not ignore the testimony of defendant merely because he had a vital interest in the outcome of the case. It is urged that this was reversible error. It is the province and right of the court to instruct the jury in any action, civil or criminal, that they should take into consideration, in weighing the testimony of the several witnesses, the interest each is shown to have in the result of the action, their appearance and demeanor while on the stand, and all facts and circumstances tending to their credit or discredit; but the court must not charge as to the credibility of particular witnesses. State v. Hoy, 83 Minn. 286, 86 N. W. 98; Harriott v. Holmes, 77 Minn. 245, 79 N. W. 1003. We think the rule was followed, and not violated, by the charge of the court in the case at bar.

In the case of State v. Lucy, 41 Minn. 60, 42 N. W. 697, the court, speaking on this subject, said: "The defendant availed himself of a statutory privilege, and gave to the jury his version of the unfortunate encounter. In referring to this fact, the court charged that such weight should be given his testimony as the jury believed it entitled to, in view of all the facts and circumstances proved on the trial, and that the defendant's interest in the result of the prosecution might also be considered. This is unquestionably the law applicable to the testimony of all witnesses, in civil or criminal cases, who have any interest what-

soever in the result of the litigation, and consequently there was no error in this portion of the charge."

In the case of State v. Borgstrom, 69 Minn. 508, 72 N. W. 799, 975, the trial court instructed the jury that they should take into consideration the interest which the defendant, as a witness, had in the result of the litigation, and the instruction was held not error.

In the case at bar, counsel, in discussing the issues before the jury, had, no doubt, referred to the interest defendant had in the result of the prosecution; and the court, with that in mind, and thoughtful of the rights of defendant, instructed them that they should not fail to consider his testimony merely because he was vitally interested in the result. · There was no, intention to reflect upon defendant, or to suggest in the remotest degree just what weight the jury should give his testimony. The court intended only to remind the jury that they should not, because he was interested, ignore his testimony. They were explicitly directed to apply to him the same rules of credibility as they applied to other witnesses.

6. Upon the question whether Cohen was authorized by defendant to collect and receive the money from the women referred to, the trial court instructed the jury as follows:

"It is the law generally that any act by an assumed agent, and a recognition of his authority by the alleged principal, may, in a proper case, prove the agency to do other similar acts. And if you find in this case that Cohen was authorized or directed by defendant to collect in his behalf money from one or more of these women, other than Addie Mills, such fact is proper to be considered in determining whether or not defendant authorized Cohen to collect money from her. Indeed, if you find that Cohen had general authority to collect protection money from abandoned women, or from a certain class of them, which included Addie Mills, then you would be justified in finding that in receiving money from Addie Mills, if in fact he received it, he received the same for the defendant, and in that event will find that he himself received the money."

It is urged that this instruction was error, for which a new trial should be granted; that it, in effect, stated to the jury that the au-

thority of Cohen might be established in the same manner that the fact of agency is established in ordinary civil actions. We do not concur in this contention. It was clearly not the intention of the court so to instruct the jury. Speaking generally, the court said, It is the law that any act by an assumed agent, and a recognition of his authority by the alleged principal, may, in a proper case, prove the agency to do other similar acts. Then follows the definite and specific statement that if the jury shall find that Cohen was authorized or directed by defendant to collect in his behalf from any one or more of the women, other than Addie Mills, such fact would be proper to be considered by them in determining whether or not defendant authorized Cohen to collect from her. This was far from instructing the jury that defendant could be charged with a criminal act on the principle of acquiescence in the acts of an assumed agent, nor could the jury have so understood. They were expressly told that it must appear that defendant authorized and directed Cohen to collect and receive the money, in order to fix upon him responsibility therefor. No exception was taken at the trial, and it comes clearly within the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. If counsel were apprehensive that the jury would be misled by it, as they now insist, the attention of the court should have been called to the matter at the time. But it is inconceivable that the jury could have been misled by this instruction, and defendant was in no way prejudiced by it. The case of People v. McLaughlin, 150 N. Y. 365, 44 N. E. 1017, is not in point.

. A number of other objections to the charge of the court are assigned as error by appellant, which we have very patiently considered, and reach the conclusion that no reversible error is presented by any of them. Taken as a whole, the charge of the learned trial court was as clear and comprehensive as a charge could possibly have been made. Every issue was carefully alluded to, in clear and explicit terms, and with great fairness the learned trial judge instructed the jury upon every legal phase of the case. It covered in a general way every request made by defendant, and presented the issues so clearly to the jury that it would seem impossible that they did not understand fully every issue before them.

7. It is urged that the verdict of the jury is not sustained by the evidence. We have examined the evidence thoroughly, and have no mis-

givings on the subject of its sufficiency to justify the conviction of defendant. We need not review it in detail in this opinion. The main features have been stated in connection with the question as to the admissibility of some of the evidence, and it is unnecessary to refer to it again. We can say only that it presents a case of the clearest and most palpable sort of corruption, and a wilful and flagrant violation of official duty. The evidence is so clear and persuasive, and so fully justifies the verdict, that it would be nothing less than usurpation of power in us to disturb it.

We have considered all the assignments of error made by defendant, not specially referred to, and find no error justifying a new trial; and the result is that the order appealed from is affirmed.

Order affirmed.