**Howard MATTHESON,
Plaintiff-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of Louisiana, Defendants-Appellees.**

No. 83–3521.

United States Court of Appeals,
Fifth Circuit.

Aug. 24, 1983.

Dwight Doskey, Orleans Indigent Defender Program, New Orleans, La., for plaintiff-appellant.

John Craft, Asst. Dist. Atty., New Orleans, La., for defendants-appellees.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

## PER CURIAM:

Petitioner Howard Mattheson was convicted of first degree murder in a Louisiana state court in 1978 and sentenced to die. His conviction and sentence were affirmed by the Supreme Court of Louisiana in 1981. *State v. Mattheson,* 407 So.2d 1150 (La. 1981). His application for a writ of certiorari to the United States Supreme Court was denied on July 6, 1983. On August 12, 1983, petitioner filed an application for a writ of habeas corpus under 28 U.S.C. § 2254 (1976) in the United States District Court for the Eastern District of Louisiana. On August 19, 1983, the district court denied the application. The district court also denied petitioner's requests for a stay of execution and for a certificate of probable cause. On August 19, 1983, petitioner filed with this court applications for a certificate of probable cause and for a stay of execution which is set for August 26, 1983.

We are governed in this case by the Supreme Court's recent opinion in *Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Specifically, in order to obtain a certificate of probable cause, petitioner must make a " 'substantial showing of the denial of [a] federal right.' " 103 S.Ct. at 3394. He must demonstrate that the issues raised in his application for federal habeas relief are "debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.' " *Id.* at 3394 n. 4 (quoting *Gordon v. Willis,* 516 F.Supp. 911, 913 (N.D.Ga.1980)).

Of the five issues raised in petitioner's application for habeas relief, only one appears to us arguably to satisfy the *Barefoot* standard. Petitioner urged, as his second ground for relief, that:

> The trial court deprived the sentencing hearing of every vestige of due process by allowing introduction of uncounselled convictions.
>
> Over the objections of petitioner's counsel, the state was allowed to intoroduce [sic] before the jury the defendant's previous pleas of guilty to three armed robberies. Petitioner's counsel objected to the use of these certified convictions on the grounds that none of the minutes showed either the presence of counsel or a valid waiver of the right to counsel. The objection was overruled, and on appeal the Supreme Court of Louisiana even noted that the state had made no showing that petitioner had been granted his Sixth Amendment rights for any of the prior pleas.
>
> The use of these uncounselled convictions gravely prejudiced the petitioner by allowing the state to argue that the defendant had committed a crime almost immediately after being released from prison on the previous serious crime, and allowed the suggestion that no matter how heinous the crime, the petitioner would eventually be released.

Record, at 4. Ground two is somewhat ambiguous. It can be read as the district court read it, namely, to claim that petitioner's constitutional right to due process was violated simply by the failure of the State affirmatively to show, at the time the three robbery convictions [1] were introduced into evidence at the sentencing phase of petitioner's trial, that petitioner was represented by counsel or had waived his right to counsel. Alternatively, ground two (partic-

---

1. In 1952, petitioner pled guilty to armed robbery and was sentenced to serve nine years in prison in Proceedings No. 554 in the district court for the County of Alfalfa, Oklahoma. In 1958, petitioner pled guilty to robbery and aggravated assault and was sentenced to serve no less than twelve years nor more than fifteen years on the robbery conviction and three years on the aggravated assault conviction in Proceedings No. 22090 in the Superior Court, County of Hartford, Connecticut. In 1967, petitioner was tried and convicted of robbery and sentenced to life imprisonment in Proceedings No. 67–2400 in the Criminal Court of Record, Dade County, Florida.

ularly the first sentence) can be read to claim that petitioner's due process rights were violated by the introduction of convictions obtained in violation of the sixth amendment right to counsel.

While the district court held that there is no requirement that a state affirmatively show that a defendant was represented by counsel or had waived his right to counsel before a prior conviction may be introduced into evidence at the sentencing phase, the district court did not address the alternative reading of petitioner's claim, i.e., that his due process right was violated by the introduction of prior convictions obtained in violation of the sixth amendment.

On petitioner's direct appeal, the Supreme Court of Louisiana clearly addressed and rejected petitioner's claim that the State was obligated to prove that the sixth amendment guarantee had been satisfied as a predicate to the admission of each of the prior convictions. In so doing, however, the state supreme court suggested that the use of the prior convictions was permissible at the sentencing phase and appeared to assume for this purpose that the convictions were indeed uncounseled:

> In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the United States Supreme Court recognized that while uncounseled felony convictions could not be used for certain purposes, the Court stated that it had "never suggested that an uncounseled conviction was invalid for all purposes." In the instant case, the prior convictions were used in the sentencing phase of the trial. The convictions were not being used to enhance punishment; rather, defendant's past criminal history was merely a part of the total picture of his "character and propensities." It did not of itself trigger added penalties.

407 So.2d at 1164.

We think that the failure of the district court to address the alternative reading of petitioner's claim stems not only from the combination in one ground for relief of distinct, although related, claims, but also from the confusion of the claims in petition-

er's brief to the district court. For example, petitioner's reply to the State's brief at the district court level argues that

> [i]n the case at bar petitioner suffered from a lack of counsel not only each of the three previous times he had pled guilty to armed robbery charges without benefit of the advice of counsel, but again when these convictions were presented to a jury which then chose to exact the ultimate penalty.

Petitioner's Reply to State's Brief at 3. Like the Louisiana Supreme Court's opinion, the State's brief to this court also appears to address both readings of petitioner's second ground for relief.

We were unable to ascertain from the papers filed with us whether the three prior convictions were in fact uncounseled and, accordingly, in a telephone conference with counsel for both parties asked that question. Counsel for petitioner replied that he did not know whether the convictions were uncounseled, nor did he think that that was relevant because in his view the Supreme Court held in *Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 261–262, 19 L.Ed.2d 319 (1967), that

> any record reflecting neither the presence of counsel nor a valid waiver of the Sixth Amendment right raises a presumption that the defendant was denied his right to counsel, and that the conviction is therefore void .... Thus, under *Burgett,* the state would have had an affirmative duty to prove the presence of counsel before introducing the questioned exhibits.

Petitioner's Reply to State's Brief at 3 (citation omitted). Petitioner's counsel has misread *Burgett,* and it is apparent that this misreading may have adversely affected the presentation of petitioner's claims to the district court and to us.

In *Burgett,* the State introduced two different versions of the same prior conviction at the enhancement portion of the defendant's trial. The first version specifically stated that the defendant had appeared "in proper person and without Counsel." 389 U.S. at 112, 88 S.Ct. at 260. The second

version stated that the defendant had appeared "in proper person," but it did not contain the additional words "without counsel." This version also stated that "after said jury had heard the evidence, argument of counsel, and the charge of the Court, they retired to consider their verdict." The Supreme Court noted that it was not clear "whether 'counsel' was being used in the singular or plural, or [that] in any event no explanation was offered for the discrepancy between the two records." *Id.* The Court held that under these circumstances, i.e., where one proffered version of the conviction affirmatively showed "on its face" the absence of counsel, a presumption was raised that the petitioner had been denied his right to counsel and, therefore, that his conviction was void. *Id.* at 114, 88 S.Ct. at 261. This holding is a far cry from the general presumption of invalidity urged by petitioner's counsel. In fact, we have held that a habeas petitioner has the burden of proving that the convictions used by the State to enhance his sentence were uncounseled. *Webster v. Estelle,* 505 F.2d 926, 928–29 (5th Cir.1974), *cert. denied,* 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975); *see also Honeycutt v. Ward,* 612 F.2d 36, 40–41 (2d Cir.1979), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980).

If this were not a capital case, we might well hold that petitioner's failure to prove up the fact that the prior convictions were uncounseled was fatal to his claim. It is clear, however, that this failure stems from the misunderstanding of petitioner's counsel about who had the burden of proof. Because this is a capital case, we are unwilling to charge petitioner with his counsel's error. Further, as we have noted, the district court has not made any finding about whether the prior convictions were in fact uncounseled and therefore obtained in violation of petitioner's sixth amendment rights, and, if so, whether the use of those convictions at petitioner's sentencing proceeding denied him due process. If, in fact, any of the prior convictions were uncounseled and the district court were to hold that the use of that conviction at petitioner's sentencing phase did not violate due

process, we could not say that the district court's holding was not "debatable among jurists of reason." *Barefoot, supra.* Accordingly, as we understand *Barefoot,* a stay of petitioner's pending execution should be granted and the district court should be directed to make findings on whether the convictions were uncounseled and whether the use of the convictions at the petitioner's sentencing proceeding denied him due process. We understand that in the interval between our telephone conference with counsel for both parties and the entry of this opinion and order, counsel for the State may have obtained evidence that the prior convictions were counseled. If so, that evidence may be introduced at the hearing, along with any other evidence adduced by the parties. When we have obtained the district court's ruling on those points, we will then consider the issuance of a certificate of probable cause.

Stay GRANTED; Instructions Given to the District Court.