**UNITED STATES of America, Appellee,**

**v.**

**Dan MARTIN, d/b/a Midway Custom Builders, Appellant.**

**UNITED STATES of America, Appellee,**

**v.**

**Norbert HARMS, Appellant.**

**Nos. 85–5058, 85–5059.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1985.

Decided Sept. 19, 1985.

---

Thomas M. Kelly, Minneapolis, Minn., for appellant.

Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Dan Martin and Norbert Harms were found guilty by a jury of making false statements in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001, and Martin was found guilty of making a false claim against the government in violation of 18 U.S.C. § 287. The district court[1] denied

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court, District of Minnesota.

the defendants' motion for acquittal, and sentenced them to confinement in a jail-type institution for a term of six months, suspended the remainder of the sentences, and placed them on probation for a period of three years. A special condition of probation was that defendants pay restitution to the community organization defrauded. Defendants appeal arguing that the use of a permissive inference instruction on the issue of intent was erroneous and the evidence was insufficient to prove that they had the specific intent to make the false statements and claims. We affirm.

Project Retrofit was developed by the Minnesota Department of Economic Security, and financed through the United States Department of Health and Human Services, to help low income households save energy and reduce costly heating bills. The project financed the installation of high efficiency flame-retention burners in oil furnaces to reduce fuel consumption. Grants were given to local community organizations. The Koochiching-Itasca Action Council (KIAC) received a grant for the project in Itasca County.

Private furnace contractors were hired to install the flame-retention burners. The work was supervised by a representative of the local community organization, who would inspect the work and verify the flame-retention burner had been installed. Under the terms of the project the furnace contractors were paid $500.00 for each job in which a flame-retention burner was installed. The burner and other parts cost approximately $200.00—$250.00; the remainder was the contractor's profit. The contractor was required to submit a "work order" form and "installer's certification" form when the work was completed. The "work order" form specified the work which was to be done, and stated that the installation of the flame-retention burner was mandatory. The "installer's certification" form was a statement signed by the contractor when the work was completed, certifying that the work specified on the "work order" form had been completed and certain standards had been met. The community representative was required to execute a "surveyor's verification" form which

verified that he had tested the contractor's work and certain performance standards had been achieved.

All contractors and representatives of community organizations who wished to participate in Project Retrofit were required to attend training sessions conducted by the Minnesota Department of Economic Security. All aspects of the program were explained, including the use of the required forms. Martin was one of the five authorized contractors from Itasca County who attended the two-day contractor's training session. Harms attended a separate training session for personnel from the local communities who were going to implement the project. He was taught how to conduct the necessary efficiency tests to determine whether the work had been done properly and how to execute the surveyor's verifications. Harms was the KIAC official responsible for administering Project Retrofit in Itasca County.

During the trial Harms and Martin admitted that they had made false statements to KIAC, and Martin admitted that he had made false claims for payment. Martin had submitted numerous work orders and installer's certifications which stated that a flame-retention burner had been installed, when in fact he had not installed the burner. For each of these jobs he had been paid $500.00. In each instance in which Martin had submitted a false work order and certificate, Harms was the person who had executed the surveyor's verification which stated the efficiency test on the flame-retention burner had been performed and that the performance standards had been met. Harms admitted that he performed no inspection of the jobs where burners had not been installed.

■ Harms and Martin argued at trial that they did not believe that it was necessary to install a burner if 80% efficiency could be reached by other means. They admitted that their statements were false, but argued that they made an innocent mistake and had no intent to deceive. Intent to deceive is an essential element of both the crime of false statement and false

claim, and whether defendants had intent to deceive was the main issue during the trial.

On appeal defendants argue that the evidence was insufficient to show that they had intent to deceive the government. In reviewing a sufficiency of the evidence claim we look at the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and resolve factual disputes in favor of the jury verdict. *Klein v. United States*, 728 F.2d 1074, 1075 (8th Cir.1984). It is undisputed that the forms filled out by Martin and Harms stated that installation of the flame-retention burner was mandatory, and defendants admitted that the statements that a burner had been installed were false.

Defendants testified that they were told at the training sessions that if 80% efficiency could be reached by other means installation of the burner was not necessary. This testimony was rebutted by the training instructors who testified that they never made any statements to that effect. There was evidence that Harms agreed to pay Martin for forty-seven jobs in advance and falsely backdate the forms so that any money which had not been spent by the termination date of the project would not be forfeited. This violated several of the project guidelines. The guidelines stated that no payments could be made until the work was completed and the performance standards were met. The work should have been divided equally among the five authorized contractors in Itasca County. Instead, Martin did all the work.

■ When Harms was fired from his position he told the KIAC Board of Directors that the reason his test results were identical to Martin's test results was because he used Martin's machine when his broke. At trial, he admitted that he had copied Martin's test results when he had made no independent test himself. The $500.00 paid to Martin for each job covered the cost of the burner and other parts, as well as his margin of profit. By not installing the burner Martin was able to substantially increase his margin of profit. The

jury apparently chose to discredit defendants' testimony that their mistake was innocent and found that there was intent to deceive the government. We believe there is substantial evidence to support the jury verdict.

■ Martin argues that he did not make false statements and claims to the government because the government representative, Harms, knew that the forms were false. He further argues that the government should be estopped from alleging the falsity of his statements and claims because Harms had misled him into believing he was conforming with the law. We reject both of these arguments. This is not a case where an unwary defendant was misled by a government agent into committing a crime, and therefore this case is distinguishable from those cited by Martin. The evidence showed Martin was in collusion with Harms, and the ultimate intent of both defendants was to deceive the Minnesota Department of Economic Security and in turn the United States Department of Health and Human Services. The fact that the government representative was also involved in the crime does not absolve Martin of liability for making false statements and claims.

Defendants argue that the use of a permissive inference jury instruction violated their right to due process because it improperly permitted the jury to believe the government did not have the burden to prove that defendants had intent to deceive. The instruction in dispute states,

> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done. In the final analysis it is up to you as individual jurors, and collectively as a jury, to decide what the intent of defendants was under the evidence in this case.

Defendants argue that this instruction has the same meaning to a jury as the instruction discussed in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which stated, "The law presumes that a person intends the ordinary conse-

quences of his voluntary acts." The Supreme Court held that this instruction could have been interpreted by the jury as a statement by the judge that either a conclusive presumption existed, or that the burden had shifted to the defendant to prove that he lacked the requisite mental state, and therefore the court held the instruction violated the defendant's due process rights and was unconstitutional. *Id.* at 524, 99 S.Ct. at 2459.

On several occasions we have held that permissive inference instructions similar to the one given in this case are distinguishable from the *Sandstrom* instruction and are permissible. *United States v. Ming Sen Shiue,* 650 F.2d 919, 924 (8th Cir.1981); *Nelson v. Solem,* 640 F.2d 133, 134–35 (8th Cir.1981). Defendants recognize that we have upheld the permissive inference instruction, but request that we reconsider our decision on the basis that a jury could reasonably believe that no evidence is required to prove intent other than the commission of the act itself. We disagree and decline to overrule our prior opinions.

■ The jury was told that it may *consider* the inference reasonable, but it was not directed to draw the inference. The jury could either accept or reject the inference, and it was emphasized in the last sentence of the instruction that the jury was the ultimate decider of the issue. In the other jury instructions the district court explicitly put the burden of proof on the government and told the jury that the defendants did not have to produce any witnesses or any evidence. The cases cited by defendants which are critical of permissive inference instructions nonetheless hold that the instruction does not violate the defendant's right to due process. *See United States v. Greenleaf,* 692 F.2d 182, 187–88 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *United States v. Federbush,* 625 F.2d 246, 255 (9th Cir.1980). We hold that the instruction given by the district court did not shift the burden of proof, nor did it impose a conclusive presumption.

In sum, we find that the evidence was sufficient to support the verdicts, the jury instructions were not reversibly erroneous,

and the fact that the government representative, Harms, was aware of Martin's false statements and claims does not absolve Martin of liability since Harms was in collusion with Martin to deceive the government.

Affirmed.