**Bobbie Dale HILL, Respondent,**

v.

**STATE of Minnesota, Petitioner, Appellant.**

**No. C6–90–1896.**

Supreme Court of Minnesota.

April 17, 1992.

**58**

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert M.A. Johnson, Anoka County Atty., K. Katherine Doty, Asst. County Atty., Anoka, for appellant.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

This appeal, on petition for review by the state, presents a Sentencing Guidelines issue relating to the appropriate procedures and standards for deciding whether an offender's "out-of-state" felony conviction should be designated as a felony in determining the offender's criminal history score and presumptive sentence for the current Minnesota offense of conviction for which the offender is being sentenced.[1] Without purporting to answer all questions relating to the appropriate procedures and standards in this context, we conclude that the sentencing court properly designated the two out-of-state convictions as felonies in computing defendant's criminal history score. Accordingly, we reverse the decision of the court of appeals affirming the postconviction court's order reducing defendant's sentence.

In 1988 defendant, Bobbie Dale Hill, was charged in Minnesota with two separate complaints alleging criminal sexual conduct involving two different victims. One complaint, which charged defendant with two counts under two different subsections of the statute defining criminal sexual conduct in the third degree, was based on evidence that defendant forced a 16–year–old girl, R.L.T., to submit to sexual intercourse. The other complaint was based on evidence of sexual misconduct in the second degree by defendant with his teenage stepdaughter.

Defendant's attorney and the prosecutor reached an agreement whereby defendant entered a so-called *Alford* plea (allowing a defendant who refuses to admit his guilt to plead guilty) to one of the counts involving R.L.T. in exchange for the dismissal of the

---

1. In this case, defendant's "out-of-state" convictions are federal convictions.

other count and the separate charge involving defendant's stepdaughter.[2]

In Minnesota in 1983, Hill had also entered an *Alford* plea on charges of criminal sexual conduct in the second degree for sexually abusing the 12–year–old daughter of a woman with whom he was living. He received a 21–month sentence with execution stayed for 15 years. Defendant clearly had a felony point for this conviction and a custody status point because he was on probation when he committed the 1988 offense.

In 1984, Hill was indicted in federal court for fraudulently obtaining $42,000 of social security disability benefits to which he was not entitled. He pled guilty to two counts based on a false statement Hill made in 1978 and a false statement made in 1982. Defendant was sentenced to two years in prison for the first count and received a consecutive 3–year probationary jail term for the second count. It appears the defendant served 13 months in the federal prison at Sandstone.

At the time of sentencing in 1988, Hill's attorney and the prosecutor left for judicial resolution the issue of whether Hill's correct criminal history score was three or four. The presumptive sentence would be 49 (45–53 months) if the score was three, and 65 (60–70 months) if the score was four. They agreed that the trial court would sentence defendant to a minimum presumptive sentence depending on whether the criminal history score was three or four. They also agreed that the sentence would be concurrent with the 1983 sentence for which probation would be revoked. The sentencing court found that Hill had a criminal history score of four: one felony point for the 1983 conviction, a custody status point because he was on probation when he committed the 1988 offense, and two points for the 1984 federal convictions for making false statements to the Social Security Administration. Because the federal convictions were divisible and not indivisible under Minn.Stat. § 609.-035, the single behavioral incident statute, he was given a 60–month prison term.

A year later defendant filed a pro se petition for postconviction relief, arguing that the criminal history score should have been three because the two federal offenses were "indivisible" because they arose out of the same behavioral incident. The district court appointed a state public defender who argued, for the first time, that neither of the federal convictions could be included in the criminal history score because the federal statute under which Hill had been convicted did not correspond to any Minnesota offense.

The postconviction court, saying it disagreed with the Sentencing Guidelines but that the Guidelines tied its hands, concluded that the correct criminal history score was two. The court reduced defendant's sentence to 41 months, the median presumptive sentence for the offense based on a criminal history score of two.

The court of appeals affirmed in an unpublished decision. It found that the state had the burden of proof at the postconviction hearing with respect to whether the sentencing court properly designated the federal offenses as felonies in computing defendant's criminal history score. It concluded that the statutory definition of the federal offense does not correspond with any Minnesota offense because the other similar Minnesota offenses require proof of intent to defraud, something the court concluded the federal statute does not require. The court said that it is proper in a case such as this to look beyond the statutory definition and determine if the misconduct underlying the federal conviction would have constituted a felony in Minnesota under the similar but not identical Minnesota statute. Concluding that the record made by the state at the postconviction hearing did not establish that defendant had any intent to defraud when he made the false statements, the court affirmed the postconviction court's determination that the federal offenses not be designated as felonies.

■ We recognized the burden-of-proof issue but did not decide it in *State v. Goff,* 418 N.W.2d 169 (Minn.1988). The issue

**2.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

there was how a defendant should raise the issue of whether the sentencing court is barred from using a prior conviction in computing a presumptive sentence for a current offense. The defendant in that case did not raise the issue until 2 weeks after sentence was imposed, and one issue therefore was whether the defendant had the burden of proof. We said:

> It can be argued that when a defendant challenges a sentence on this ground in a postconviction proceeding he has not only the burden of production but also the ultimate burden of proving the invalidity of the prior conviction. *Cf., Mattheson v. Maggio,* 714 F.2d 362 (5th Cir.1983) (habeas corpus petitioner has burden of proving convictions used to enhance sentence were uncounseled). Since, however, defendant filed his motion before the time for direct appeal from judgment of conviction had expired that issue is not before us.

418 N.W.2d at 172. Minn.Stat. § 590.04, subd. 3, which deals with postconviction remedy, provides that "[u]nless otherwise ordered by the court" the burden of proof at a postconviction hearing is "upon the petitioner" (*i.e.,* the defendant seeking postconviction relief) to "establish the facts by a fair preponderance of the evidence." Because of our disposition of this appeal, we need not and do not decide this issue in this case either. Prudent defense attorneys, however, can clearly avoid risking a switching of the burden of proof from the state to the defense by raising, at the time of sentencing, the issue whether or not the prior conviction may be used. On the other hand, prudent prosecutors faced with a postconviction hearing in this context will want to come prepared to assume the ultimate burden of proof.

Although scores of Sentencing Guidelines cases have come before this court since 1980, we have not addressed in any depth the issue of when an out-of-state felony conviction should be designated as a felony in computing a defendant's criminal history score. Rather, we have only touched on the issue. *See Pilger v. State,* 337 N.W.2d 695, 698 (Minn.1983) ("generally" the trial court need only determine if the out-of-state conviction was for an offense that "corresponds" to an offense in Minnesota); *State v. Marquetti,* 322 N.W.2d 316, 319 (Minn.1982) (defendant was convicted in Cuba when he was 16 of burglary based on his stealing a chicken; *held,* state, which had burden of proof at *sentencing* hearing, failed to establish that defendant would have been prosecuted as an adult in Minnesota under the same circumstances and therefore sentencing court improperly assigned a felony point to the offense); *State v. McAdoo,* 330 N.W.2d 104 (Minn.1983) (making it clear it is trial court's role to resolve any factual dispute bearing on the defendant's criminal history score).

■ Minnesota Sentencing Guidelines II.B. says only that the designation of an out-of-state conviction as a felony, gross misdemeanor or misdemeanor is "governed by the offense definitions and sentences provided in Minnesota law." The comments provide:

> II.B.501. Out-of-state convictions include convictions under the laws of any other state, or the federal government, including convictions under the Uniform Code of Military Justice, or convictions under the law of other nations.

> II.B.502. The Commission concluded that convictions from other jurisdictions must, in fairness, be considered in the computation of an offender's criminal history index score. It was recognized, however, that criminal conduct may be characterized differently by the various state and federal criminal jurisdictions. There is no uniform nationwide characterization of the terms "felony," "gross misdemeanor," and "misdemeanor."

> II.B.503. It was concluded, therefore, that designation of out-of-state offenses as felonies or lesser offenses, for purposes of the computation of the criminal history index score, must properly be governed by Minnesota law.

> II.B.504. Generally, the classification of prior offenses as petty misdemeanors, misdemeanors, gross misdemeanors, or felonies should be determined on the ba-

sis of current offense definitions. An exception to this are offenses in which a monetary threshold determines the offense classification. The monetary threshold at the time the offense was committed determines the offense classification for criminal history purposes, not the current threshold.

II.B.505. It was contemplated that the sentencing court, in its discretion, should make the final determination as to the weight accorded foreign convictions. In so doing, sentencing courts should consider the nature and definition of the foreign offense, as well as the sentence received by the offender.

Although the comments do not so state, obviously if the sentencing court abuses its discretion in deciding whether or not to designate an out-of-state conviction as a felony for purposes of computing the defendant's criminal history score, then the court's determination may be reversed.

The defense in this case basically argues that the sentencing court cannot go beyond looking at the definition of an out-of-state conviction and determining if Minnesota has an offense with the same basic definition. The defense bases this on *State v. Briton*, 265 Minn. 326, 121 N.W.2d 577 (1963). *Briton*, however, is a pre-Guidelines case dealing with whether a defendant could be charged under the Habitual Offender Act on the basis of an out-of-state conviction.

■ While the comments to the Sentencing Guidelines are not particularly helpful, they do suggest that while the main focus should be on the offense definition, the sentencing court should also consider "the nature" of the offense and "the sentence received by the offender." The comment to which we refer, II.B.505, focuses on the determination of the weight to be given "foreign" convictions, but we see no valid basis for distinguishing "foreign" convictions in the sense of convictions from foreign countries from "foreign" or "out-of-state" convictions in the sense of convictions occurring in other states or in federal court. To restrict the sentencing court to looking at the definition of the out-of-state

or foreign offense would in effect be to unjustifiably bar the sentencing court from designating scores of federal felony offenses and scores of felony offenses from other states as felonies for criminal history purposes in Minnesota, something which would be unfair to those defendants whose prior felony convictions are Minnesota offenses rather than foreign or out-of-state offenses.

We are not prepared at this point, however, to say that in every case involving an out-of-state or foreign conviction the parties must engage in a "mini-trial" to determine what the conduct was underlying the foreign or out-of-state conviction. Suffice it to say, the obvious idea behind making Minnesota law the reference point or standard is to insure that all defendants prosecuted in Minnesota—including those whose prior convictions are foreign or out-of-state convictions—have their criminal history scores computed according to the same basic standards. Even without regard to any constitutional problems created, it would simply be unfair to those defendants receiving criminal history points for prior Minnesota convictions if their counterparts with prior foreign or out-of-state convictions of similar offenses for the same basic conduct did not receive criminal history points for those offenses. Further, we think that this case illustrates our belief that in many, perhaps most, cases the determination can be made by the sentencing court without turning the sentencing hearing into a mini-trial relating to the conduct underlying the out-of-state conviction.

Turning to the two federal convictions at issue in this case, it is clear defendant pleaded guilty to two counts of violating 18 U.S.C. § 1001, which provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement

or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

One of the two counts was based on a false statement defendant made in 1978, and the other was based on a false statement made in 1982.

■ It is true that, as stated in II.B.502, "[t]here is no uniform nationwide characterization of the terms 'felony,' 'gross misdemeanor,' and 'misdemeanor.' " However, the offense of violating section 1001 was and is a "felony" under the federal classification which, like the Minnesota classification, classifies an offense as a felony if the offense *may be* punished by more than 1 year in prison (*i.e.*, a year and a day or longer). The Minnesota definition of "felony" is the common definition of what is a felony offense. Thus, it appears that the federal crime of making a false statement is a felony offense under the Minnesota definition.

Our welfare fraud statute has been interpreted as including the element of intent to defraud, *State v. Ibarra*, 355 N.W.2d 125, 129 (Minn.1984), whereas the federal false statement statute apparently does not include the element of intent to defraud. *See* 1 Working Papers of the National Commission on Reform of Federal Criminal Laws 669, n. 27 (1970). However, courts have interpreted the federal false statement statute as including the element of intent to deceive (though not intent to defraud). *See, e.g., United States v. Martin*, 772 F.2d 1442, 1444–45 (8th Cir.1985) ("intent to deceive is an essential element of * * * the crime of false statement"). Further, "many Federal fraud prosecutions can be—and are—based upon section 1001." 1 Working Papers, *supra* at 669. Thus, the fact that the federal false statement statute may not include an element of intent to defraud does not mean that the conduct underlying defendant's conviction in federal court is not felonious conduct under the welfare fraud statute in Minnesota.

■ According to the court of appeals' opinion itself, defendant admitted filing two separate reports with the Social Security Administration, one in 1978 and one in 1982, in order to have the administration determine his initial and continuing eligibility for disability benefits. In those reports defendant said he was not employed when, in fact, he was employed. He obtained $42,000 as a result. That, to us, is welfare fraud in Minnesota: knowingly obtaining or attempting to obtain assistance to which one is not entitled by means of a willfully false statement or by intentional concealment of the material fact or by other fraudulent device. Minn.Stat. § 256.98 (1990); CRIMJIG 24.15 and 24.16. That, also, is theft in Minnesota (*see* Minn.Stat. § 609.52, subds. 2(3) and 2(4) and CRIMJIG 16.05 to 16.08). While the statutes may not be perfectly "parallel," they are sufficiently "close" to each other that it would be stretching things to say that the defendant's conduct was felonious under federal law but not felonious under Minnesota law.

We therefore reverse the decision of the court of appeals and reinstate the original sentence imposed by the sentencing court.

Reversed and original sentence reinstated.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent. The majority decision violates the basic principles of due process of law guaranteed by both the Minnesota and United States Constitutions. *See* Minn.Const. art. I, § 7; U.S. Const. Amend. XIV. The majority argues that regardless of the constitutional implications, it would be unfair to defendants with past Minnesota convictions if defendants with out-of-state convictions were not given "bonus" points for similar conduct. While this apparent attempt to ensure equal protection of the laws to Minnesota convicts is admirable, the majority has failed to consider the due process problems with its approach. In effect, the majority allows unproven facts to establish an element of an offense to justify enhancing Hill's sentence. Such action cannot be justified under constitutional principles.

The majority claims that Hill's convictions under the Federal False Statements Statute, 18 U.S.C. § 1001, would constitute welfare fraud and theft under Minnesota

law. As the majority points out, welfare fraud and theft both require a specific intent to defraud whereas the federal statute requires something less—a specific intent to deceive.[1] Thus, a conviction under the federal statute does not necessarily establish an intent to defraud as the majority ultimately seems to believe. The defendant's federal convictions merely establish that he filed false reports with a governmental agency with the intent to deceive. For the majority to find, beyond a reasonable doubt, that the defendant intended to *defraud* the government is in fact broadening the crime to which the defendant actually pleaded guilty.

A comparison of the elements of welfare fraud and making false statements will further illustrate this point. The elements of welfare fraud are as follows:

1. Obtaining or attempting to obtain assistance;

2. To which one is not entitled;

3. By means of a false statement or representation; and

4. Defendant knew the statement or representation was false.

*See* CRIMJIG 24.16 (3rd ed. 1990). The elements of making a false statement are as follows:

1. Defendant knowingly made a false statement or representation to the government;

2. Defendant acted willfully in making the false statement or representation; and

3. The statement was material.

*See* Devitt, Blackmar & O'Malley, *Federal Jury Practice and Instructions*, § 37.07 (4th ed. 1990). When comparing the elements, it is quite obvious that welfare fraud contains an additional one which was not proven in the federal case; namely, obtaining or attempting to obtain assistance. Hill probably did obtain assistance to which he was not entitled but "probably" is not good enough. The fact remains that this element was not proven beyond a

reasonable doubt. "[T]he due process clause of the fourteenth amendment to the United States Constitution requires the state to prove each element of the crime charged beyond a reasonable doubt." *State v. Merrill*, 428 N.W.2d 361, 366 (Minn.1988) (Yetka, J.); *see also State v. Brom*, 463 N.W.2d 758, 768 (Minn.1990) (Wahl, J. dissenting).

Although *State v. Briton* was a pre-guidelines case, it pointed out the problems with the approach adopted by the majority. *Briton* concerned the enhancement of sentences under the Habitual Offender Act. The issue was the defendant's prior conviction for larceny under an Iowa statute which classified a felony-level offense at more than $20. At that time, Minnesota's larceny statute had a felony-level threshold of more than $25. Although the evidence was based on a theft of $46.26, this court refused to allow the conviction to count under the Act because the definitions of larceny differed as to value. This court reasoned:

> [I]t is conceivable that a defendant in a felony prosecution may fail to contest the value of the property involved, only because in the particular jurisdiction where he is being tried the value charged and the value admitted constitute the same degree of the offense. The difference will not be material unless there is later occasion to determine whether the elements of the crime committed in one state constitute a felony in another state, a remote and unlikely ramification few offenders will have in mind.

*Briton*, 265 Minn. at 329, 121 N.W.2d at 579. Here, defendant had neither a motive nor an opportunity to contest whether he actually received or attempted to receive any benefits. Yet the majority is willing to find him guilty of doing so. To make such a finding without affording Hill an opportunity to defend himself violates due process.

The majority also believes that the sentencing judge will not have to convene a

---

1. "Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit.

\* \* \* 18 U.S.C. § 1001 does not require that the government prove a specific intent to defraud." *United States v. Godwin*, 566 F.2d 975, 976 (5th Cir.1978) (per curiam).

"mini-trial" in every case because the sentencing judge will normally be able to determine if the underlying offense would constitute a crime in Minnesota. But how, by gut reaction? Although the majority would subject the sentencing judge's determination to an abuse of discretion standard, I believe a sentencing judge should be limited to the facts necessarily proven by a foreign or out-of-state conviction when applying the sentencing guidelines. This would provide the sentencing judge with a workable standard and avoid the problem of requiring a burdensome "mini-trial" in those cases where the sentencing court is unable to decide whether a foreign or out-of-state conviction should be considered for sentencing purposes.

As a final point, it is important to remember that Hill pleaded guilty to the underlying crime and was punished accordingly. This case only concerns how much "bonus" time the defendant should get based on his criminal history score. By pleading guilty, Hill saved the government the time and expense of a trial. In exchange, he was not required to admit any intent to defraud. Now the majority has decided to nullify his half of the bargain without the benefit of proof. This sort of trial by fiat is precisely what the due process clause is designed to prevent. The least the state could do in such a situation is prove that a foreign or an out-of-state conviction would, beyond a reasonable doubt, constitute a crime under Minnesota law.

I respectfully dissent from the majority's view that a sentencing judge may rely on unproven facts in determining whether a foreign or an out-of-state conviction would be a crime under Minnesota law.

WAHL, Justice (dissenting).

I join in the dissent of Justice Tomljanovich.

GARDEBRING, Justice (dissenting).

I join in the dissent of Justice Tomljanovich.