STATE of Minnesota, Respondent,

v.

John Richard COMBS, Appellant.

No. C5-92-2025.

Court of Appeals of Minnesota.

Aug. 3, 1993.

Review Denied Sept. 21, 1993.

Hubert H. Humphrey, III, Atty. Gen., Margaret H. Chutich, Sp. Asst. Atty. Gen., St. Paul, and Craig S. Nelson, Freeborn County Atty., Albert Lea, for respondent.

John Stuart, State Public Defender and Carlos M. Figueroa, Sp. Asst. State Public Defender, Dorsey & Whitney, Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and HUSPENI and HARTEN, JJ.

## OPINION

DAVIES, Judge.

This appeal is from a judgment of conviction. Appellant John Combs challenges his conviction for second degree criminal sexual conduct under Minn.Stat. § 609.343, subd. 1(a) (1990), and his sentence to 37 years' imprisonment under the repeat sex offender statute, Minn.Stat. § 609.346, subd. 2a (1990). We affirm.

## FACTS

Combs was charged with one count of second degree criminal sexual conduct for engaging in sexual contact with eight-year old T.A.D. in July 1991. The complaint alleged that while Combs was baby-sitting T.A.D. and other children, he made T.A.D. go with him to the laundry room in the basement. There, he pulled down T.A.D.'s pants and his own and asked T.A.D. to touch his penis, which she did.

T.A.D. testified that, while in the laundry room, Combs pulled down his pants. She could not remember whether Combs touched her. She testified, however, that Combs told her he wanted to see the "scar" on her back, then pulled her pants down. She testified he pulled down her underwear also. She testified that Combs hugged her, then grabbed her hand and had her touch his penis.

T.A.D. reported the incident to her father about three weeks after the incident. Police then interviewed Combs, who admitted having his pants down in the laundry room and asking the child to touch his penis. He also admitted to asking T.A.D. to show him her "scar," but denied that T.A.D. touched his penis.

The state presented as *Spreigl* evidence testimony concerning a 1979 incident in Iowa for which Combs was convicted of lascivious acts with a child. The trial court excluded evidence concerning two other 1979 incidents not charged. The trial court issued written findings concluding that Combs was guilty of second degree criminal sexual conduct.

At sentencing, the prosecutor submitted copies of police reports concerning the other two Iowa offenses, as well as copies of the two Iowa statutes Combs was convicted of violating. Defense counsel argued that the Iowa offenses did not trigger the repeat sex offender statute and that Minnesota's repeat sex offender statute was intended for violent offenders, but the court applied the statute and sentenced Combs to 37 years.

## ISSUES

I. Is the evidence sufficient to support the conviction?

II. Is the Iowa conviction a qualifying offense under the repeat sex offender statute?

III. Does the repeat sex offender statute apply only to violent offenses?

IV. Does the statute violate the state constitutional prohibition against cruel or unusual punishment?

## ANALYSIS

### I.

Combs contends T.A.D.'s testimony was insufficient to support the conviction. He points to the vagueness and lack of recol-

lection she exhibited and claims sexual contact was not proved.

In reviewing a challenge to the sufficiency of the evidence, this court must assume the fact-finder believed the state's witnesses and disbelieved contrary evidence. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). This court must view the evidence and any reasonable inferences that could be drawn from it in a light most favorable to the state. *Id.*

Although T.A.D.'s testimony was at times vague, she did testify to the essential element that she touched Combs' penis. The supreme court in *State v. Kraushaar,* 470 N.W.2d 509, 513 (Minn.1991), affirmed a second degree criminal sexual conduct conviction despite some vagueness in the child-victim's testimony. And, although corroboration is not required, the testimony of T.A.D.'s brothers provided some corroboration of the events of the evening. Moreover, Combs' own statement corroborated almost all of T.A.D.'s testimony. We conclude the evidence is sufficient to support the conviction.

## II.

Combs argues that Minn.Stat. § 609.346, subd. 2a (1990), does not apply to him because his prior Iowa conviction is not a qualifying offense under the statute. We disagree.

The statute (amended in 1992 to require a life sentence) provided at the time of Combs' offense:

> The court shall sentence a person to a term of imprisonment of 37 years, notwithstanding the statutory maximum sentences under sections 609.342 and 609.343 if:
>
> (1) the person is convicted under section 609.342 or 609.343; and
>
> (2) the person has two previous sex offense convictions under section 609.-342, 609.343, or 609.344.

Minn.Stat. § 609.346, subd. 2a (1990). Although the statute first specifies that the prior offenses must be under the Minnesota statutes enumerated, it also goes on to define the term "previous sex offense conviction," in part, as follows:

> A "sex offense" is a violation of sections 609.342 to 609.345 or any similar statute of the United States, or [of] this or any other state.

Minn.Stat. § 609.346, subd. 3 (1990).

(Our analysis can best be understood by reading the statute as including the implied modifier "substantively" before the word "similar." Thus, whether Combs can be sentenced to 37 years turns on whether the Iowa statute he violated in 1979 is "substantively similar" to Minnesota's criminal sexual conduct statute.)

In *Hill v. State,* 483 N.W.2d 57, 61–62 (Minn.1992), the supreme court held that, in deciding whether out-of-state convictions can be treated as felonies for determining a guidelines criminal history score, the court may look to the definition of the offense, the nature of the offense, and the sentence received. The issue in *Hill* and similar sentencing guidelines cases is what designation (felony, gross misdemeanor, or misdemeanor) to assign to out-of-state convictions. *See* Minn.Sent. Guidelines II.B.501.

The issue under the repeat sex offender statute, somewhat narrower, is whether the out-of-state conviction involved violation of a statute "similar" to the Minnesota sex offender statutes designated in paragraph 2a. This court has held, in interpreting an earlier version of Minn. Stat. § 609.346, that the legislature intended a "substantive comparison of statutes" in determining whether the out-of-state statute was "similar." *State v. Kornexl,* 351 N.W.2d 26, 27 (Minn.App.1984). The court in *Kornexl* analyzed whether the out-of-state *offense,* as defined, was "included within the Minnesota offenses specified in section 609.346." *Id.* at 28. The court did not suggest, however, that every act included in the out-of-state definition had to be within the definition of the Minnesota offense. *See id.* at 29 (violation of New Hampshire statute "could constitute" violation of designated Minnesota statutes). Thus, the statutes need not be congruent;

it is necessary only that both cover the prior offense.

Combs argues that *State v. Briton,* 265 Minn. 326, 121 N.W.2d 577 (1963), *overruled on other grounds by State v. Clark,* 270 Minn. 538, 134 N.W.2d 857 (1965), which allows only consideration of the foreign *definition* of the offense, should control. *Briton* involved a statutory enhancement under the Habitual Offenders Act. But *Briton*'s holding has since been questioned, at least for guidelines criminal history score issues. *State v. Stutelberg,* 435 N.W.2d 632, 636 (Minn.App.1989). It is also contrary to the supreme court's more recent analysis in *Hill.*

■ Combs also argues that because the Iowa lascivious acts statute includes acts other than sexual contact as defined in Minnesota, it is not a "similar" statute. But the Iowa prohibition against "fondling," by or upon the child, fits the Minnesota definition of sexual contact. *See* Minn.Stat. § 609.341, subd. 11(a)(i), (ii) (1990). Under the *Kornexl* standard, a violation of the Iowa statute, therefore, "could constitute" a violation of the listed Minnesota statutes; but that is not enough under the *Hill* standard. Combs' prior convictions qualify even more clearly under that standard, however. Contemporary records establish that the nature of Combs' prior offense was, at a minimum, fondling the child. The state, thus, has shown that Combs has two prior convictions for violating statutes that, in the actual circumstances, are substantively similar to the relevant Minnesota statutes.

### III.

■ Combs cited a later amendment to Minn.Stat. § 609.346 as indicating an intent to limit enhancement to violent offenders. But the 1992 change does not support this argument. *See* 1992 Minn.Laws ch. 571, art. 1, §§ 21–25. That amendment split sentence enhancement into either mandatory life or 30–year sentence. *Id.* Combs' argument refers to the prerequisite for a life sentence that one of the prior offenses led to an upward departure. *See* Minn. Stat. § 609.346, subd. 2a(2)(ii) (1992). But

Combs has *two* prior offenses, and therefore his record would still qualify for enhancement under a different subparagraph, albeit for 30 years instead of 37. *See* Minn.Stat. § 609.346, subd. 2a(2)(iii) (1992).

### IV.

Finally, Combs challenges Minn.Stat. § 609.346, subd. 2a, as violative of the state constitutional prohibition against "cruel or unusual punishment." Minn. Const. art. 1, § 5.

This court has held that the repeat sex offender statute imposing a 37–year mandatory sentence does not violate the federal constitutional prohibition against "cruel and unusual punishment." *State v. Robinson,* 476 N.W.2d 896, 904 (Minn.App.1991), *aff'd as modified* 480 N.W.2d 644 (Minn. 1992) (not discussing constitutional challenge). Combs contends the statute should now be rejected under the state constitution because the state constitution refers to "cruel *or* unusual" rather than "cruel *and* unusual" punishment. He also cites Minnesota's leadership in proportional sentencing.

The United States Supreme Court in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), held that the federal constitutional prohibition against "cruel and unusual" punishment forbids punishments that are "unusual," i.e., "out-of-the-ordinary," but does not limit the duration of a punishment that is an ordinary means of sanctioning criminal conduct. *Id.* at ——, 111 S.Ct. at 2691–92. There is support in *Harmelin* for Combs' argument that it is the word "and" in the federal constitution's phrase "cruel and unusual" that limits the Eighth Amendment analysis to punishments that are unusual, excluding the disproportionality attack he now asserts under the state constitution. *See id.* at ——, 111 S.Ct. at 2687.

The phrase "cruel *or* unusual" originates with the Northwest Ordinance of 1787. *See People v. Lorentzen,* 387 Mich. 167, 194 N.W.2d 827, 829 n. 3 (1972). Some of the states formed from the Northwest Territory incorporated the phrase into their

constitutions. *See id.* The Minnesota Bill of Rights, as first proposed in both the Democratic and Republican constitutional conventions, used the federal version, "cruel and unusual punishment." Minnesota Convention Debates 87 (1857) (Republican); Minnesota Convention Debates 203 (1857) (Democratic). We have found no discussion, however, in the constitutional debates indicating that the term "cruel or unusual punishment" was later chosen to provide a broader protection than "cruel and unusual punishment."

The early Minnesota cases on excessive punishment generally support the *Harmelin* analysis emphasizing the unusual nature of, rather than the excessive or disproportional duration of, the punishment. *See State v. Borgstrom,* 69 Minn. 508, 520–21, 72 N.W. 799, 803 (1897) (state constitutional prohibition refers to punishments that are cruel or barbarous), *overruled on other grounds by State v. Sailor,* 130 Minn. 84, 153 N.W. 271 (1915). In 1894 the court stated:

> The [cruel or unusual punishment clause] is directed, not so much against the amount or duration of the punishment, as against the character of it, what was in mind being those punishments which were cruel and degrading in their nature, and which had been condemned by public opinion years before the adoption of our constitution.

*State v. Rodman,* 58 Minn. 393, 402, 59 N.W. 1098, 1100 (1894). This history of construction places no significance on the use of the conjunction "or" rather than "and."

■ Even assuming the state constitution allows a proportionality analysis through the term "cruel or unusual punishment," we do not believe the 37 years' imprisonment for repeat sex offenders is a violation of proportionality. This court, in applying a pre-*Harmelin* proportionality analysis, has found the statute not to be cruel and unusual punishment. *Robinson,* 476 N.W.2d at 904. We emphasized that the statute "is designed to punish recidivist criminal sexual conduct" and requires viewing the sentence "in light of [the offend-er's] past behavior." *Id.* For a repeat sex offender, 37 years in prison is not a disproportionate sentence.

Combs' reliance on Minnesota's leadership in proportional sentencing adds little. It is the legislature which, in its prerogative to fix punishments, has decided on proportional, determinate sentencing. *See generally State v. Osterloh,* 275 N.W.2d 578, 580 (Minn.1978). But the alleged constitutional prohibition asserted by Combs would be a policy limiting the legislature's prerogative. The legislature's recent sentencing policy is unrelated to a proper construction of the state constitution.

### DECISION

The evidence is sufficient to support the conviction. The repeat sex offender statute was properly applied to appellant. That statute does not violate Article 1, section 5, of the Minnesota Constitution.

**Affirmed.**