*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0200**

State of Minnesota,
Respondent,

vs.

Omar Taha Yaseen,
Appellant.

**Filed July 5, 2016
Affirmed
Rodenberg, Judge**

Clay County District Court
File Nos. 14-CR-14-1684, 14-CR-14-2658

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Peterson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

In this consolidated appeal from his separate convictions for second-degree controlled-substance distribution and fourth-degree assault, appellant Omar Taha Yaseen

argues that the district court abused its discretion by denying his motion to withdraw his guilty plea to the controlled-substance charge, and that both sentences were erroneously based on an incorrect criminal-history score. We affirm.

**FACTS**

On May 27, 2014, appellant was charged with one count of second-degree controlled-substance sale under Minn. Stat. § 152.022, subd. 1(5) (2012), and one count of fourth-degree criminal sexual conduct under Minn. Stat. § 609.345, subd. 1(b) (2012), resulting from an incident involving a 15-year-old female. He remained in jail awaiting trial on those charges when, in August 2014, he was charged with fourth-degree assault under Minn. Stat. § 609.2231, subd. 3(2) (2014), for spitting on a corrections officer.

That same month, appellant pleaded guilty to the second-degree-controlled-substance charge in the first file. Appellant, who is from Iraq and whose first language is Arabic, indicated that he did not need an interpreter for his plea, and confirmed that he could read, speak, and understand the English language. Appellant stated under oath that he understood the plea petition, had been fully advised by his attorney, understood his rights, was waiving his trial rights, and was pleading guilty because he was guilty. The criminal-sexual-conduct charge in that file was dismissed.

A pre-sentence investigation report was prepared, during which appellant admitted that the May incident involved him having sexual contact with the 15-year-old female. At a hearing after his controlled-substance plea, appellant asked to be sentenced immediately. Appellant's counsel advised against this course of action because counsel wanted to argue concerning the statutory requirement that appellant register as a

predatory offender despite the state having dismissed the criminal-sexual-conduct charge. The district court granted appellant's counsel a continuance to accommodate arguments concerning the constitutionality of the registration requirement.

In September 2014, appellant pleaded guilty to the fourth-degree-assault charge. Once again, appellant stated under oath at his plea hearing that he understood the plea petition, had been fully advised by his attorney, understood his rights, and was waiving his trial rights to plead guilty because he was guilty.

Using a criminal-history score of five, the district court sentenced appellant to 98 months in prison for the second-degree controlled-substance conviction, a severity level eight offense. *See* Minn. Sent. Guidelines 5.A (2014). The district court determined that appellant was statutorily required to register as a predatory offender, and noted that appellant had not challenged "probable cause for the criminal-sexual-conduct charge at any time during the proceedings." Appellant was advised that he would be required to register as a predatory offender for a minimum of 10 years.

The district court then sentenced appellant on the fourth-degree-assault conviction, a severity level one offense. *Id.* The district court used a criminal-history score of seven to sentence appellant to 22 months in prison, concurrent with his second-degree-controlled-substance sentence. Appellant did not object at sentencing to the criminal-history scores used by the district court.

In January 2015, appellant filed a notice of appeal in both cases. We consolidated the appeals, and granted appellant's motion to stay the consolidated appeal to allow appellant to pursue postconviction proceedings in the district court. Appellant filed his

3

petition for postconviction relief in both files in July 2015, and a hearing was held that September.

In December 2015, the district court issued an order denying appellant postconviction relief. The district court first rejected appellant's argument that the United States Supreme Court's decision in *Padilla v. Kentucky* applied to situations that do not implicate immigration consequences. 559 U.S. 356, 365, 130 S. Ct. 1473, 1481 (2010). The district court also determined that no manifest injustice resulted from appellant's pleas, despite his lack of knowledge concerning the consequences while in prison resulting from his being a registered predatory offender under Department of Corrections (DOC) rules. Turning to appellant's sentencing arguments, the district court agreed that an erroneous criminal-history score had been used at sentencing. The reported score of five-and-one-half for the second-degree-controlled-substance conviction should have been five. But the district court determined that the one-half point difference did not change appellant's presumptive sentence of 98 months, and it determined that the difference in criminal-history score from seven to six-and-one-half in the fourth-degree-assault conviction was immaterial, because the discretionary range for appellant's sentence using either score was 17-22 months, and appellant was sentenced to serve 22 months in prison concurrent with the other sentence.

This reinstated appeal followed.

**D E C I S I O N**

## I. Postconviction relief

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012); *State v. Petersen*, 799 N.W.2d 653, 656 (Minn. App. 2011), *review denied* (Minn. Sept. 28, 2011). We review the validity of a guilty plea de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

There is no absolute right to withdraw a guilty plea. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). After sentencing, a defendant may only withdraw a guilty plea by establishing that withdrawal is necessary "to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1; *Theis*, 742 N.W.2d at 646. A manifest injustice is shown when a guilty plea is not valid. *Id.* To be valid, a guilty plea "must be accurate, voluntary and intelligent (i.e., knowingly and understandingly made)." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

Appellant argues that his plea was not knowingly or intelligently made because he was not convicted of any sex offense, he denied that the second-degree-controlled-substance offense had a sexual component, and he was not informed that, as a result of his predatory-offender registration, (1) he would be labeled a sex offender by the DOC, (2) he would be required to attend sex-offender treatment, (3) he would be subject to sex-offender-specific conditions of release, (4) he would be subject to the

community-notification process, and (5) he could potentially be referred for civil commitment.

The state argues, and the district court ruled, that the consequences of predatory-offender registration are collateral consequences of the conviction, and therefore appellant may not, because of those consequences, withdraw his plea, even if they were unknown to him at the time.

"The purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "'Consequences' refers to a plea's *direct* consequences." *Raleigh*, 778 N.W.2d at 96 (emphasis added). Conversely, "collateral consequences 'are not punishment' but are 'civil and regulatory in nature and are imposed in the interest of public safety.'" *State v. Crump*, 826 N.W.2d 838, 842 (Minn. App. 2013) (quoting *Kaiser v. State*, 641 N.W.2d 900, 905-07 (Minn. 2002)), *review denied* (Minn. May 21, 2013).

Appellant argues that we should reject the direct- or collateral-consequence distinction because that distinction rests on "shakier ground" post-*Padilla*. 559 U.S. at 365, 130 S. Ct. at 1481. Appellant argues that *Padilla* changes the analysis and renders a plea unintelligent if a defendant is unaware of a consequence that is closely connected to the criminal process. *See id.* ("We . . . have never applied a distinction between direct and collateral consequences . . . . Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."); *but see*

6

*Sames v. State*, 805 N.W.2d 565, 570 (Minn. App. 2011) (declining to extend *Padilla* beyond deportation into the context of firearm possession, a collateral consequence); *Crump*, 826 N.W.2d at 843 (declining to extend *Padilla* into the context of potential future driving-while-intoxicated pleas).

Here, there is no need to reach the question of whether *Padilla* applies to cases beyond the context of immigration consequences. Appellant has failed to show that his trial counsel was ineffective. *See Padilla*, 559 U.S. at 366-69, 130 S. Ct. at 1482-84 (applying *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), to Padilla's ineffective-assistance-of-counsel claim). Appellant was fully informed that he would be required to register as a predatory offender because of the original charges in the complaint. He was not only fully advised of the consequences of this requirement, Minn. Stat. § 243.166, subd. 1b(a)(iii) (2014), but his attorney obtained a continuance to dispute the registration requirement specifically *because* of these consequences. Moreover, as part of his plea, appellant initialed a "Predatory Offender Notification Form." That form advised appellant of his duty to register for a minimum of 10 years, that he could have stricter requirements if he was assigned a Level 2 or Level 3 classification pursuant to Minn. Stat. § 244.052 (2014), and that he would have to disclose his registration status to law-enforcement and other agencies that provided care for elderly and/or disabled individuals. Appellant initialed next to the line stating "I understand that if I am civilly committed pursuant to [Minn. Stat. § 253B.185] or a similar law of another state, I am required to return **four** Verification Forms each year." Therefore, appellant's claims that

he was unaware of the level-assignment, community-notification requirements, and the possibility of civil commitment simply have no merit.

This leaves only appellant's arguments concerning the DOC's treatment of him as a sex offender and the requirement that he participate in an appropriate treatment program as potential bases of relief. But the commissioner of corrections is specifically authorized to order appellant to participate in the treatment program because appellant meets the DOC's definition of a sex offender. *See* Minn. Stat. § 241.67, subds. 1(1), 3 (2014); *Roth v. Comm'r of Corrections*, 759 N.W.2d 224, 228 (Minn. App. 2008) (citing DOC Div. Directive 203.013, which defines a "sex offender" as "an offender who is subject to predatory offender registration, or has a prior charge or conviction for an offense that was sex related").

Appellant provides no statute or caselaw suggesting that an attorney has a duty to describe all of the particulars of how the DOC will administer and require programming while a client is in prison. Nor has appellant provided any expert opinion or other evidence concerning the standard of care of an attorney regarding programming requirements while the attorney's client is in prison. Here, and regardless of whether the DOC-programming implications are considered a "direct" or a "collateral" consequence of his conviction, appellant has failed to demonstrate on this record that his attorney's performance was ineffective. Even if we apply the *Strickland* test to appellant's lawyer's performance, there is no showing of ineffective assistance. Our review of the record reveals that appellant's trial counsel very thoroughly and competently represented appellant.

The district court did not err in denying appellant's petition to withdraw his plea.

## II. Criminal-history-score issues

Under the Minnesota Sentencing Guidelines, a district court is to sentence an offender based on a presumptive sentencing range determined by the severity level of the offense and the offender's criminal-history score. Minn. Sent. Guidelines 4 (2014); *State v. Jackson*, 749 N.W.2d 353, 359 n.2 (Minn. 2008). The offender's criminal-history score is calculated, in part, by assigning a point value to the offender's prior felony convictions. Minn. Sent. Guidelines 2.B.1 (2014).

When a district court calculates an offender's criminal-history score, it must consider convictions from other states. Minn. Sent. Guidelines 2.B.5 & cmt. 2.B.502 (2014). The effect of an out-of-state conviction on an offender's criminal-history score generally depends on how the conviction would have been treated if the offense had occurred in Minnesota. *Id.*; *State v. Reece*, 625 N.W.2d 822, 825 (Minn. 2001). When a monetary threshold determines the out-of-state offense classification, the equivalent Minnesota offense is determined based on the monetary threshold in effect in Minnesota when the out-of-state offense was committed. *See* Minn. Sent. Guidelines cmt. 2.B.502.

An out-of-state conviction may be treated as a felony for Minnesota criminal-history-score purposes *only* if the offense would be defined as a felony under Minnesota law *and* the offender received a sentence that in Minnesota would constitute a felony-level sentence. Minn. Sent. Guidelines 2.B.5.b. (2014). The state has the burden of proving sufficient facts concerning an offender's out-of-state conviction to warrant the assigned points. *State v. Maley*, 714 N.W.2d 708, 711 (Minn. App. 2006). "The state

must establish by a fair preponderance of the evidence that the prior conviction was valid, the defendant was the person involved, and the crime would constitute a felony in Minnesota." *Id.* In determining whether an out-of-state conviction may be treated as a felony in Minnesota, the district court may consider factors including the definition of the offense and the sentence received. *State v. Combs*, 504 N.W.2d 248, 250 (Minn. App. 1993), *review denied* (Minn. Sept. 21, 1993).

Here, the district court determined that the pre-sentence investigation report, upon which the district court had relied at sentencing, erroneously assigned appellant a full criminal-history point for a North Dakota felony. The conviction should not have been assigned one point, because the offense would have been a gross misdemeanor had the conviction been in Minnesota. The amount involved in the fraudulent transaction was less than $150. *Compare* N.D. Cent. Code § 12.1-23-11 (2012) (providing that it is a felony to use an individual's debt card to take goods and services not in excess of $1,000 without authorization from that individual), *with* Minn. Stat. § 609.821, subds. 1, 2(1), 3(a)(1)(v) (2012) (providing that a similar offense is only a gross-misdemeanor if the amount is less than $250). However, the district court concluded that this error had no impact on appellant's second-degree-controlled-substance sentence. Although appellant was erroneously assigned a criminal-history score of five-and-one-half, he was sentenced using a criminal-history score of five. *See* Minn. Sent. Guidelines cmt 2.B.102 (2014) (stating that "an offender with less than a full point is not given that point.")

Concerning appellant's challenge to his fourth-degree-assault sentence, the district court determined that appellant's criminal-history score should have been six-and-one-

half instead of seven. The district court noted that the sentencing guidelines call for a presumptive sentence of 19 months, with a discretionary range of 17 to 22 months, for a fourth-degree-assault conviction and a criminal-history score of *six or more*. Minn. Sent. Guidelines 4.A & 5.A. The district court concluded that appellant was not entitled to be resentenced because his 22-month sentence was within the discretionary range using a criminal-history score of either six-and-one-half or seven. Because the same sentencing range would apply regardless of the half-point in question, appellant's sentence would not have been any different even if the correct criminal-history score had been used.

On appeal, appellant agrees that the controlled-substance sentence is proper, but argues that his assault sentence should be reduced to 19 months pursuant to the guidelines because he only agreed to the plea based on his understanding that he would receive the presumptive sentence.

Despite the error in the initial computation of his criminal-history score, appellant was given a presumptive sentence under the guidelines for both offenses. A presumptive sentence is one that falls anywhere within the sentencing range provided by the guidelines. *See Jackson*, 749 N.W.2d at 359 n.2. Using appellant's correct criminal-history score at the designated severity level for his offense of fourth-degree assault, the presumptive range is 17-22 months under the guidelines, with 19 months being the suggested "middle-of-the-box" sentence. *See* Minn. Sent. Guidelines 4.A (2014). Regardless of whether appellant's criminal-history score was six-and-one-half or seven, the presumptive-sentence range remained the same. *Id.* The district court imposed a sentence at the top of that range. The 22-month prison term is a presumptive

sentence, as called for by appellant's plea agreement. The district court acted within its discretion in concluding that appellant is not entitled to postconviction relief.

**Affirmed.**